IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LIBERTY MUTUAL FIRE INSURANCE, As subroee of, | ) ) ) | |
| Plaintiff, | ) ) | 4:08CV3055 |
| v. | ) ) ) | |
| BURLINGTON NORTHERN SANTA FE RAILWAY, a Delaware Corporation, | ) ) ) | MEMORANDUM AND ORDER ON PENDING MOTIONS |
| Defendant. | ) ) | |

On February 14, 2008, the plaintiff, Liberty Mutual Fire Insurance (as subrogee of Aqua Chem, Inc.), filed a complaint against the defendant, Burlington Northern Santa Fe Railway (BNSF), in the District Court of Lancaster County, Nebraska. (See filing 1, Ex. A.) The complaint alleges that the defendant, "without permission from Aqua Chem, negligently pushed [a] railcar containing [a] superheater into Aqua Chem's facility causing significant damage to the superheater and Aqua Chem's facility." (Id. ¶ 9.) The defendant removed the action to this court on March 20, 2008. (See filing 1.) Now before me are the plaintiff's motion for partial summary judgment, (filing 31); the plaintiff's amended motion for summary judgment, (filing 36); the defendant's motion for summary judgment, (filing 41); and the defendant's motion to strike, (filing 42). For the following reasons, I find that the plaintiff's motion for partial summary judgment and amended motion for summary judgment will be denied; the defendant's motion to strike will be granted in part; and the defendant's motion for summary judgment will be granted.

1

## I. BACKGROUND[1]

Aqua Chem is "involved in the design and manufacture of boilers." (Pl.'s Facts ¶ 1.) On November 28, 1961, Aqua Chem's and BNSF's predecessors-in-interest entered into an Industrial Track Agreement (ITA). (Pl.'s Facts ¶ 2 (citing Pl.'s Index, filing 33, Ex. B).) The ITA states that the "Railroad Company" (i.e., BNSF's predecessor-in-interest) would assist the "Industry" (i.e., Aqua Chem's predecessor-in-interest) "in the construction of, and to operate and maintain, a track" in a defined area according to specific terms and conditions. (See Pl.'s Index, filing 33, Ex. B at 1.) The Railroad Company was to "provide reasonable service" on this track. (Id. at 3.)

On July 3, 1985, Aqua Chem's predecessor-in-interest and BNSF entered into a Supplemental Industrial Track Agreement. (Pl.'s Facts ¶ 3.) The supplemental agreement modified Section 4 of the 1961 ITA, which addresses the maintenance of the track. (See Pl.'s Index, filing 33, Ex. C.) In all other respects, the 1961 ITA remained "in full force." (Pl.'s Facts ¶ 4.) There is no dispute that the 1961 ITA, as supplemented, is binding on Aqua Chem and BNSF.

Three sections of the ITA (as supplemented) are at issue in this case. First, Section 9 states, in relevant part, as follows:

---

[1] The facts summarized in this section are taken from the parties' statements of material facts. (See generally Pl.'s Statement of Material Facts, filing 32 (Pl.'s Facts); Def.'s Statement of Additional Facts, filing 43 (Def.'s Facts).)

The defendant has filed a motion to strike the plaintiff's statements of fact and supporting evidence. (See filing 42.) In its motion to strike, the defendant argues that all of the plaintiff's supporting evidence must be stricken because it "has been submitted in contravention of NECivR 56.1(a) without affidavit or deposition testimony to establish foundation and authenticity." (Filing 42 at 3.) The local rules do state that "documents filed with [an] index [of evidence] must be identified and authenticated by affidavit." NECivR 7.1(a)(2)(c). However, the plaintiff's index of evidence is accompanied by an affidavit that seems to authenticate the exhibits, (see filing 33, Attach. 1), and as the defendant has not identified any specific deficiency in this affidavit, the defendant's motion to strike the plaintiff's evidence due to a lack of foundation and authenticity will be denied. I have considered the remaining arguments set forth in the defendant's motion to strike, and I shall address those arguments specifically–to the extent that it is necessary to do so–below.

> The Industry agrees not to place or construct an elevator nearer than eight (8) feet from the nearest rail of said Track, or to construct, place, or permit any other building, excavation or obstruction nearer than six (6) feet from the nearest rail, or along or above said Track at a less height than twenty-three (23) feet above the top of rails, without approval in writing of the Railroad Company . . . . Industry agrees to assume responsibility for all loss or claims arising out of failure to comply with the above requirements.

(Def.'s Facts ¶ 15; see also Pl.'s Index, filing 33, Ex. B at 3.)  Section 10 of the ITA states,

> The Industry also agrees to indemnify and hold harmless the Railroad Company for loss, damage, or injury from any act or omission of the Industry, its employees, or agents, to the person or property of the parties hereto and their employes [sic], and to the person or property of any other person or corporation, while on or about said Track; and if any claim or liability other than from fire shall arise from the joint or concurring negligence of both parties hereto it shall be borne by them equally.

(Pl.'s Index, filing 33, Ex. B at 3.)  Finally, Section 4 states,

> Any work performed by Industry in constructing or maintaining the track or any facilities extending over, under or across the same or in making additions and betterments thereto shall be done in a substantial and workmanlike manner and in accordance with Railroad's standards.

(Pl.'s Index, filing 33, Ex. C.)

The track defined in the ITA runs through three separate bays inside Aqua Chem's facility. (Pl.'s Facts ¶ 6; Def.'s Br., filing 43, at 6, 15.)  The parties' evidence indicates that two doors separate the three bays from one another, and a third door "permits outside access" to the "outermost" bay. (See, e.g., Def.'s Index, filing 44, Ex. 4, Vest Aff. ¶¶ 3-7.)  According to the defendant, the door that permits outside access to the outermost bay measures 22 feet, 1 inch in height and, moving inward, the remaining doors measure 22 feet, 2 inches in height and 20 feet, 3/8 inches in height, respectively. (See id. ¶¶ 5-7.)  According to the plaintiff, Bay 3 (i.e., the innermost bay) is approximately 19.5 feet in height. (Pl.'s Index, filing 33, Ex. D., Bockenstedt Aff. ¶ 5.)[2]  There is no dispute that the door to the innermost bay is less than 23 feet in height.

On May 19, 2006, a car loaded with a superheater was positioned on the track in or near

---

[2] The defendant has moved to strike Bockenstedt's affidavit "for lack of foundation, as irrelevant, immaterial and as inadmissible parol evidence." (Filing 42 at 3.)  The motion to strike is denied insofar as it is directed toward paragraph 5 of the affidavit.

the middle bay of Aqua Chem's facility. (Pl.'s Facts ¶ 11; Def.'s Br. at 11.) One or more BNSF employees attempted to move this car into the innermost bay, but the superheater collided with the top of the door and sustained damage. (Pl.'s Facts ¶¶ 12-13, Def.'s Br., filing 43, at 12.) The parties dispute whether the BNSF employees had been authorized by Aqua Chem's agent to move the car into the innermost bay, (compare Pl.'s Index, filing 33, Bockenstedt Aff. ¶¶ 14-16 with Def.'s Index, filing 44, Ex. 2, Teeple Aff. ¶¶ 2, 7), and whether it was "common" or "typical" for the defendant to move railcars into Aqua Chem's facility, (compare Pl.'s Index, filing 33, Bockenstedt Aff. ¶ 11 with Def.'s Index, filing 44, Ex. 2, Teeple Aff. ¶¶ 6).[3]

As noted above, the plaintiff filed a complaint against the defendant in the District Court of Lancaster County, Nebraska, and the action was eventually removed to this court. (See filing 1.) On April 23, 2008, following a telephone conference with counsel, I entered an order stating:

> 2. [there shall be] no initial progression order or initial planning conference beyond this present order, until resolution of the issue of the applicability of the Industrial Track Agreement (ITA) alleged in the defendant's Answer has been resolved;
>
> 3. the parties shall have until July 24, 2008, to complete discovery on the issue of the applicability of the ITA;
>
> 4. the plaintiff shall have until August 25, 2008, to file an appropriate motion for resolution of the ITA issue, and the local rules shall thereafter apply to the handling and disposition of that motion[.]

(Filing 10.)

Discovery proceeded on the issue of the applicability of the ITA; indeed, it appears that discovery focused narrowly on this issue. (See, e.g., filings 18, 24.) On August 25, 2008, the plaintiff filed a "Motion for Partial Summary Judgment," (filing 31), along with a supporting brief and an index of evidence, (filings 32-33). On the following day–after the deadline specified

---

[3]As noted above, (see supra note 2), the defendant has moved to strike Bockenstedt's affidavit on the grounds that it is irrelevant and immaterial. The plaintiff, meanwhile, has moved to strike Teeple's affidavit, noting correctly that the defendant moved successfully to quash the plaintiff's attempt to depose Teeple. (See filing 46 at 2, 4; see also filing 43 at 15-16; filing 18; filing 24.) I am mindful of these objections; this evidence is cited merely to illustrate that some of the circumstances surrounding the accident are in dispute.

in the order of April 23, 2008, lapsed–the plaintiff filed an "Amended Motion for Summary Judgment." (Filing 36.)  This motion was not accompanied by a supporting brief or index of evidence, and it appears that the amended motion is substantively identical to the original motion–save for the deletion of the word "Partial" from the title of the original motion. (Compare filing 31 with filing 36.)  The defendant has moved to strike the plaintiff's amended motion, arguing that 1) the motion is untimely, and 2) a "full" summary judgment cannot be granted in the plaintiff's favor because "damages issues have not yet been explored in discovery." (Filing 42 at 3.)  Though the presence or absence of the word "partial" in the titles of the plaintiff's motions is of limited significance, the defendant's motion to strike is well-taken. Rather than striking the amended motion, however, I shall deny it on the ground that it was not filed timely.

In addition to its motion to strike, the defendant filed its own motion for summary judgment. (See filing 41.)  My analysis of the parties' motions follows.

## II.   STANDARD OF REVIEW

A motion for summary judgment shall be granted by the court "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c). A "material" fact is one that "might affect the outcome of the suit under the governing law," and a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).  If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, then the burden shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment," Anderson, 477 U.S. at 257, and "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that

5

there is a genuine issue for trial," id. at 256 (citing Fed. R. Civ. P. 56(e)).

### III. ANALYSIS

The parties' motions for summary judgment focus on two main issues: 1) whether Section 9 of the ITA is ambiguous, and 2) whether Section 9 of the ITA releases the defendant from liability for damages caused by its negligence or intentional conduct. I shall analyze each of these issues in turn.

#### A. Whether Section 9 of the ITA is Ambiguous

The plaintiff argues first that it is entitled to summary judgment because Sections 4, 9, and 10 of the ITA are "ambiguous and unenforceable as a matter of law." (Filing 32 at 7.) The defendant counters that it is entitled to summary judgment because Section 9 states unambiguously that the plaintiff must assume responsibility for all loss or claims arising out of its failure to adhere to the ITA's vertical clearance requirement. (Filing 43 at 19-20.) I find that the relevant portions of the ITA are not ambiguous.

The parties appear to agree that the interpretation of the ITA is governed by Nebraska law. The Nebraska Supreme Court has held "that a court interpreting a contract must first determine as a matter of law whether the contract is ambiguous." State ex rel. Bruning v. R.J. Reynolds Tobacco Co., 746 N.W.2d 672, 679 (Neb. 2008) (citing Kluver v. Deaver, 741 N.W.2d 1 (Neb. 2006)). "A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings." Id. Importantly, the fact that "the parties to a document have or suggest opposing interpretations does not necessarily, or by itself, compel a conclusion that the document is ambiguous." Kluver, 714 N.W.2d at 6. "A contract must receive a reasonable construction and must be construed as a whole, and if possible, effect must be given to every part of the contract." R.J. Reynolds Tobacco Co., 746 N.W.2d at 679. If, however, a contract is "written in clear and unambiguous language," it "is not subject to interpretation or construction and must be enforced according to its terms." Id.

The plaintiff claims that Section 9 of the ITA is ambiguous because "it does not specify whether any existing facilities on the Premises that do not meet the minimum clearance

requirement of twenty-three feet high are in violation of the agreement." (Filing 32 at 6.) As noted above, Section 9 states, "The Industry agrees not to place or construct an elevator nearer than eight (8) feet from the nearest rail of said Track, or to construct, place, or permit any other building, excavation or obstruction nearer than six (6) feet from the nearest rail, or along or above said Track at a less height than twenty-three (23) feet above the top of rails, without approval in writing of the Railroad Company." (Pl.'s Index, filing 33, Ex. B, at 3.) The plaintiff argues,

> [T]he term "any other" seemingly refers to buildings that were not already in place at the time of the Agreement. In this instance, it is undisputed that Bay 3 was in place at the time the 1985 Supplemental [A]greement was signed and that Aqua Chem did not modify the bay door at issue from the time of the Supplemental Agreement until the date of the incident.

(Filing 32 at 6.) I take it that the plaintiff means to argue that there is a latent ambiguity in the contract about the meaning of the term "any other," and that the plaintiff should therefore be allowed to present evidence to show that an ambiguity exists. "A latent ambiguity exists when collateral facts make the meaning of the contract uncertain." Kluver, 714 N.W.2d at 6. Here, the "collateral fact" that allegedly makes the meaning of the contract uncertain is that Bay 3 was "in place" at the time of the signing of the supplemental agreement. Thus, according to the plaintiff, it is possible that the term "any other building" means any building "not already in place at the time of the agreement," and because Bay 3 was "already in place" when the supplemental agreement was signed, it is not clear whether the Bay 3 door is subject to the requirements of Section 9. (Filing 32 at 6.) The plaintiff adds that neither Section 10 nor Section 4 clarify whether buildings that were in existence prior to the execution of the ITA are subject to the clearance requirements set forth in Section 9. (See id. at 7, 9.) I am not persuaded, however, that the collateral fact reveals an ambiguity. Section 9 was not first adopted in 1985 via the signing of the supplemental agreement; rather it was a part of the "original" 1961 ITA. Also, the supplemental agreement did not modify Section 9, but left it "in full force and effect." (Pl.'s Index, filing 33, Ex. C.) Because the plaintiff has submitted no evidence that the doorway at issue was "already in place" at the time of the signing of the 1961 agreement, it simply does not avail the plaintiff to argue that the words "any other" might mean "buildings that were not in

7

place" when Section 9 was adopted.

In any event, I find that Section 9 is unambiguous when the contract is considered as a whole. Taken in context, the term "any other building, excavation or obstruction" clearly means buildings, excavations, or obstructions other than elevators. The plaintiff's suggestion that the term "any other" is susceptible of a conflicting meaning is not only unavailing (as explained above), but also unreasonable. If, as the plaintiff suggests, the parties to the ITA wanted to exclude pre-existing buildings from the clearance requirements set forth in Section 9, they certainly could have added such an exclusion to the ITA by stating so definitively. But the plain language of the contract will not be tortured to create an ambiguity. Cf. Guerrier v. Mid-Century Ins. Co., 663 N.W.2d 131, 135 (Neb. 2003) ("The language of an insurance policy should be read to avoid ambiguities, if possible, and the language should not be tortured to create them."). Also, the fact that Sections 10 and 4 of the ITA do not speak to the question of whether pre-existing structures might be somehow exempt from the requirements of Section 9 seems to undermine, rather than support, the plaintiff's alternate interpretation of the ITA. In short, nothing in the contract suggests that the relevant portion of Section 9 is susceptible of two reasonable, conflicting interpretations.

Because the ITA is written in clear and unambiguous language, it must be enforced according to its terms. R.J. Reynolds Tobacco Co., 746 N.W.2d at 679. The defendant argues that, in accordance with the terms of Section 9 of the ITA, Aqua Chem is responsible for the losses at issue even if the losses were caused by the defendant. (Filing 43 at 28-30.) The plaintiff disagrees, however, arguing that Section 9 does not insulate the defendant from liability for its intentional or negligent conduct. I shall address these arguments below.

### B. Whether, Under Section 9 of the ITA, Aqua Chem Is Responsible for Losses Caused by the Defendant

The plaintiff argues that Section 9 is not "enforceable" because the defendant "exceeded the scope and purpose of the [ITA] when it moved Aqua Chem's property without its permission." (Filing 32 at 7.) More specifically, the plaintiff claims that "[n]owhere in either Agreement does it state that BNSF may move the property of Aqua Chem for the purpose of bringing railcars into its facility," (id.), and that the defendant committed the intentional tort of "trespass to chattels" when it moved the superheater, (id. at 8). The plaintiff adds that because

8

"the Agreements are silent on the issue of indemnification for damages resulting from BNSF's negligent or intentional conduct," the ITA does not shield the defendant from liability. (Id. at 8). In response, the defendant objects to the plaintiff's "new theory" of trespass to chattels, arguing that the complaint sounds only in negligence and that the trespass theory is conceptually unsound. (Filing 43 at 26-28.) In addition, the defendant argues that any alleged intentional or negligent conduct on its part is immaterial under Section 9 of the ITA. (See id. at 28-30.)

Preliminarily, I agree with the defendant's argument that the complaint sounds solely in negligence. The complaint alleges that the defendant owed Aqua Chem a duty to use reasonable care while moving the superheater, and that the defendant breached that duty. (See filing 1, Ex. A. Compl. ¶¶ 10-11.) It also alleges that the defendant acted negligently when it failed to follow Aqua Chem's instructions and moved the superheater "without permission." (See id. ¶ 9, 11.a.) It does not allege that the defendant's entering Aqua Chem's facility or moving the superheater amounted to a trespass, or any other intentional tort. The complaint simply does not state a "trespass" claim. E.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2507 (2007) ("Although [Rule 8(a)(2)] encourages brevity, the complaint must say enough to give the defendant 'fair notice of what the plaintiff's claim is and the grounds upon which it rests.'").

Citing Wulf v. Adaptive Motion Control Sys., Inc., No. 4:01CV3095, 2003 WL 168649 (D. Neb. Jan. 24, 2003), the plaintiff argues that because Section 10 of the ITA does not include either 1) language stating specifically that the defendant shall not be liable for its own negligence, or 2) clear and unequivocal language that such is the intent of the parties, BNSF is not shielded from liability by the ITA. (See filing 32 at 8.) It is true that Section 10 does not state that the defendant is to be absolved of liability for the negligent actions that it allegedly committed in this particular case.[4] Section 9, however, states that Aqua Chem "agrees to assume responsibility for all loss or claims arising out of failure to comply" with the clearance

---

[4] To be precise, Section 10 of the ITA does state specifically that "the Industry assumes all responsibility for and agrees to indemnify the Railroad Company against loss or damage . . . regardless of negligence of the Railroad company" in certain circumstances not at issue in this case. (Pl.'s Index, filing 33, Ex. B at 3 (emphasis added).) Thus, the plaintiff's suggestion that Section 10 does not state "that Aqua Chem will indemnify BNSF for its own negligent . . . acts," (filing 32 at 8), is not accurate–though this error is not material.

requirements–including the height clearance requirement. (Pl.'s Index, filing 33, Ex. B at 3 (emphasis added).) The plaintiff does not argue that the terms of Section 9 do not amount to "clear and unequivocal language" that the parties' intention was to indemnify the defendant for its own negligence if a loss or claim were to arise out of Aqua Chem's failure to comply with the clearance requirements.

Section 9 of the ITA provides that buildings other than elevators must not be constructed, placed, or permitted above the track at a height less than 23 feet without the Railroad Company's written approval. It is undisputed that the doorway at issue was of a height less than 23 feet above the track, and there is no evidence that BNSF or its predecessor-in-interest approved this doorway. In other words, there is no dispute that the doorway did not comply with the clearance requirements. Section 9 also states clearly and unequivocally that the Industry assumes responsibility for <u>all loss or claims</u> arising out of failure to comply with the clearance requirements. I agree with the defendant that, under the plain language of the ITA, the defendant's alleged negligence is irrelevant under the circumstances of this case. Aqua Chem is responsible for the losses caused by the collision between the superheater and the doorway.

**IT IS ORDERED** that:

1. The plaintiff's motion for partial summary judgment, filing 31, is denied;

2. The plaintiff's amended motion for summary judgment, filing 36, is denied;

3. The defendant's motion to strike, filing 42, is granted in part as explained in the memorandum accompanying this order; and

4. The defendant's motion for summary judgment, filing 41, is granted

Dated October 24, 2008.

BY THE COURT

s/ Warren K. Urbom
United States Senior District Judge